FILED
United States Court of Appeals
Tenth Circuit

January 6, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLIAM MONTGOMERY,

    Plaintiff - Appellee,

v.

                              No. 23-1315

ARMANDO CRUZ,

    Defendant - Appellant.
_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 20-CV-003189-PAB-MEH)**
_____

Madison L. Smith, Assistant City Attorney (Joshua R. Woolf, Assistant City Attorney, with her on the briefs), Denver City Attorney's Office, Denver, Colorado, for Defendant-Appellant.

Erin M. Gust, Davis Graham & Stubbs LLP (Theresa Wardon Benz, with her on the briefs), Denver, Colorado, for Plaintiff-Appellee.
_____

Before **BACHARACH**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal grew out of a police officer's search of a suspect's pockets and wallet. The search triggers two overarching issues.

For the pockets, we consider whether the officer could justify the search based on probable cause to make an arrest. If a suspect is arrested, the officer can ordinarily conduct a search incident to the arrest. *United States v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019). But what if the suspect is never arrested? Absent an actual arrest, the officer can't justify a search based on the right to make an arrest.[1]

For the wallet, we consider what happens when a suspect expresses consent after an illegal search. In our view, an illegal search doesn't become legal just because a suspect later says that he would have provided the information if the officer had just asked.

## 1.    Officer Cruz conducts a search without making an arrest.

These issues arise from Mr. William Montgomery's shopping trip at a Walmart store. As he left, he was stopped and asked for his receipt. He declined, and a nearby police officer (Officer Armando Cruz) again asked for the receipt. Mr. Montgomery again declined.

Officer Cruz suspected shoplifting and said that he was going to get the person's "name" and "information." Appellant's App'x at 191–92 ¶¶ 7–11. Mr. Montgomery put his bags on the floor, but was told to raise his

---

[1]    Granted, a search may be permissible for other reasons, such as consent or exigent circumstances. *See United States v. Smith*, 797 F.2d 836, 840 (10th Cir. 1986).

hands. Officer Cruz then handcuffed Mr. Montgomery and started to pat him down.

But before Officer Cruz patted the jacket, he saw a bulge and asked what it was. Mr. Montgomery responded that he didn't know. Officer Cruz then reached into Mr. Montgomery's pockets, removing a prescription bottle and a wallet and pulling the driver's license out of the wallet. Mr. Montgomery responded: "yeah, like I said, I tried to give [the ID] to you."

Following the search, Mr. Montgomery was detained in a police vehicle while Walmart employees investigated. Their investigation showed that Mr. Montgomery had paid for the items, and he was released.

## 2.     Officer Cruz urges qualified immunity.

Mr. Montgomery sued, claiming a violation of the Fourth Amendment when Officer Cruz searched the pockets and wallet. Officer Cruz moved for summary judgment based on qualified immunity. The district court denied the motion for summary judgment, and Officer Cruz appeals.

On appeal, Officer Cruz urges qualified immunity, which immunizes public officials from suit when the plaintiff fails to show the violation of a clearly established constitutional right. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). In invoking qualified immunity, Officer Cruz denies a constitutional violation and argues alternatively that a constitutional violation wouldn't have been clearly established.

3

**3.      We apply the standard for summary judgment to the district court's factual conclusions.**

In this appeal, we conduct de novo review, applying the same standard that governed in district court. *Avant v. Doke*, 104 F.4th 203, 207 (10th Cir. 2024). Because Officer Cruz asserts a defense of qualified immunity, Mr. Montgomery bears "a heavy two-part burden." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)). This burden requires Mr. Montgomery to show that Officer Cruz violated a clearly established right. *Thomas*, 765 F.3d at 1194. In determining whether a constitutional violation is clearly established, we are bound by the district court's factual conclusions. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010).[2] We thus consider whether the district court's factual conclusions could demonstrate a constitutional violation when Officer Cruz reached into Mr. Montgomery's pockets.

**4.      A jury could reasonably infer a clearly established violation of the Constitution when Officer Cruz searched Mr. Montgomery's pockets.**

The resulting issue is whether the Fourth Amendment prohibited Officer Cruz from reaching into the pockets without patting them.

---

[2]      We can disturb these conclusions only if they are "blatantly contradicted" by the record. *Lewis*, 604 F.3d at 1226 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). But Officer Cruz doesn't argue that the record blatantly contradicts the district court's factual conclusions.

A police officer can ordinarily pat a suspect's pocket during an investigative stop. *Terry v. Ohio*, 392 U.S. 1, 29 (1968). If something feels like a weapon, the officer can reach into the pocket and retrieve the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375–77 (1993). But Officer Cruz didn't pat any of the pockets. He instead reached in and retrieved Mr. Montgomery's belongings.

Other circumstances may allow an officer to conduct a search when stopping a person to investigate or to make an arrest. But these circumstances don't exist here.

### a.    Officer Cruz couldn't search the pockets in order to conduct an investigation.

Upon reasonable suspicion, Officer Cruz could stop Mr. Montgomery to investigate whether he had shoplifted. *Poolaw v. Marcantel*, 565 F.3d 721, 736 (10th Cir. 2009). And for self-protection, Officer Cruz could pat Mr. Montgomery's pockets to see if he had a weapon. *United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir. 2006). If Officer Cruz felt an object and reasonably believed that it could be a weapon, he could reach into the pockets and retrieve the weapon. *Minnesota v. Dickerson*, 508 U.S. 366, 375–77 (1993).

The district court concluded that a factual dispute existed on whether Officer Cruz had reached into the pockets without patting them. If the jury

were to resolve the dispute in Mr. Montgomery's favor, the search would have violated the Fourth Amendment.

Defense counsel disagreed in oral argument, arguing that Officer Cruz might have attributed the bulge to a gun. Until oral argument, however, defense counsel had never suggested that Officer Cruz thought the bulge might have come from a gun. Oral argument was too late for this argument. *Cox v. Wilson*, 971 F.3d 1159, 1174 (10th Cir. 2020).

Moreover, the summary-judgment record contains no evidence that Officer Cruz attributed the bulge to a gun. If Officer Cruz had reasonably suspected the presence of a gun, he could have patted the pocket. *Pennsylvania v. Mimms*, 434 U.S. 106, 111–12 (1977). But the district court recognized a factual dispute over whether Officer Cruz had reached into the jacket pocket without patting it. Without an initial pat-down, Officer Cruz would have violated the Fourth Amendment by reaching into the pocket. *See United States v. Aquino*, 674 F.3d 918, 921, 925–26 (8th Cir. 2012) (concluding that when a suspect had an unnatural bulge near his calf, the Fourth Amendment prohibited a search before confirming the presence of a weapon or contraband through a pat-down); *United States v. Brown*, 996 F.3d 998, 1008–12 (9th Cir. 2021) (concluding that when a suspect had a noticeable bulge at his waistband, the Fourth Amendment prohibited the officer from reaching into the suspect's pocket without

patting it first). So Officer Cruz's reach into the pocket would have violated the Fourth Amendment.

### b.    The search didn't take place incident to an arrest.

Nor could Officer Cruz justify the search based on probable cause to make an arrest.[3]

If Officer Cruz had made an arrest, his safety could have been jeopardized from the combination of stress and close contact with Mr. Montgomery. *Knowles v. Iowa*, 525 U.S. 113, 117 (1998). And if Mr. Montgomery hadn't been arrested, he presumably could have left and hidden or destroyed items shoplifted from the Walmart. *See id.* at 116 (noting that a search incident to an arrest can be justified by "the need to preserve evidence for later use at trial"). Given the safety risk and possible destruction of evidence, Officer Cruz could have searched Mr. Montgomery's pockets incident to an arrest. *United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023).

But Officer Cruz admits that he hadn't arrested Mr. Montgomery before conducting the search. *See* Appellant's Opening Br. at 14 n.4 ("Officer Cruz is not currently challenging the Court's determination that Mr. Montgomery was not under arrest at the time of the search . . . .").

---

[3]    Officer Cruz argues that Mr. Montgomery failed to address probable cause for a search. But the constitutionality of Officer Cruz's conduct does not turn on probable cause. So Mr. Montgomery had no need to address the existence of probable cause.

Officer Cruz downplays this admission, arguing that officers can conduct a search right before an arrest. *See Rawlings v. Kentucky*, 448 U.S. 98, 110–11 (1980); *United States v. Anchondo*, 156 F.3d 1043, 1045–46 (10th Cir. 1998). But in oral argument, Officer Cruz admits for purposes of this appeal that he never arrested Mr. Montgomery.

Officer Cruz instead waited for Walmart to determine whether Mr. Montgomery had paid for the items.[4] When Walmart determined that Mr. Montgomery had paid for the items, Officer Cruz declined to make an arrest. Without an arrest, our precedent prevented Officer Cruz from searching the suspect's pockets absent an arrest even if probable cause existed. *See United States v. Ward*, 682 F.2d 876, 880 (10th Cir. 1982) (concluding that even though probable cause existed to believe that the defendant had committed a federal offense, "the seizure of the contents of his pockets was not constitutionally permissible" "inasmuch as [he] was not arrested"); *United States v. Robinson,* 414 U.S. 218, 235 (1973) (stating that "[i]t is the fact of the lawful arrest which establishes the authority to search"); *United States v. Sanchez*, 555 F.3d 910, 921 (10th Cir. 2009) ("To be sure, it appears that there can be no search incident to arrest unless the suspect is at some point formally placed under arrest.");

---

[4]     Officer Cruz also concedes in his reply brief that "an arrest did not follow," explaining that he decided to wait for Walmart to review its surveillance tapes. Appellant's Reply Br. at 2.

*cf. United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998) ("A warrantless search preceding an arrest is a legitimate 'search incident to arrest' as long as . . . the arrest followed shortly after the search.").[5] So under our precedent,[6] the absence of an arrest prevented Officer Cruz from conducting a search as incident to an arrest.

### c. The constitutional violation would have been clearly established.

Because the district court's universe of facts would demonstrate a constitutional violation, Officer Cruz could obtain qualified immunity only if the constitutional violation had not been clearly established. *See* Part 2, above. The clarity of a violation involves a pure matter of law. *Cox v. Glanz*, 800 F.3d 1231, 1246 n.7 (10th Cir. 2015). In determining this matter of law, we focus on Officer Cruz's appellate arguments. *Santucci v. Commandant*, 66 F.4th 844, 851 n.9 (10th Cir. 2023).

In his opening brief, Officer Cruz argues that (1) probable cause would have been at least arguable and (2) the case law didn't clearly prohibit a search when the suspect could have been arrested.

---

[5]    In *Sanchez* and *Anchondo*, the defendants were arrested. *Sanchez*, 555 F.3d at 922 ("The search of Mr. Sanchez was promptly after his arrest . . . ."); *Anchondo*, 156 F.3d at 1045–46 (stating that "the arrest occurred immediately after the drugs were found on the defendant's body").

[6]    Officer Cruz urges us to modify our precedent to allow a search here. But one panel can't overrule another in the absence of en banc consideration or a superseding opinion of the Supreme Court. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam).

The first argument is immaterial because the constitutionality of the search doesn't turn on probable cause. *See* note 3, above.

And the second argument is impossible to square with controlling precedents. These precedents establish two guiding principles:

1.    When an officer stops someone to investigate, the officer must conduct a pat-down before reaching into the suspect's pockets. *Sibron v. New York*, 392 U.S. 40, 65 (1968); *United States v. Santillanes*, 848 F.2d 1103, 1109 (10th Cir. 1988).

2.    When an officer makes an arrest, the officer can search a person in the course of making the arrest. *United States v. Knapp*, 917 F.3d 1161, 1165 (10th Cir. 2019). But the lawfulness of the search is conditioned on the making of an arrest. *See United States v. Sanchez*, 555 F.3d 910, 921 (10th Cir. 2009) ("To be sure, it appears that there can be no search incident to arrest unless the suspect is at some point formally placed under arrest."); *see also United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998) ("A warrantless search preceding an arrest is a legitimate 'search incident to arrest' as long as . . . the arrest followed shortly after the search.").

In applying these principles, we are guided by Officer Cruz's concessions and the district court's factual conclusions. Officer Cruz concedes, for purposes of this appeal, that Mr. Montgomery was never arrested. *See* p. 8 & note 4, above. And the district court concluded that a factual dispute existed on whether Officer Cruz had reached into the pockets without patting them.

Based on the absence of a pat-down or an arrest, all officers should have understood that the Fourth Amendment would have prohibited a search of Mr. Montgomery's pockets. Officer Cruz contends that this

prohibition would be "absurd" by requiring him to make an arrest "after investigating and discovering exculpatory evidence . . . ." Appellant's Reply Br. at 7.

Of course, Officer Cruz didn't need to make an arrest. But he couldn't justify a search as "incident to an arrest" that never took place. Nor could Officer Cruz reach into Mr. Montgomery's pockets without patting them. As a result, Officer Cruz's search of the pockets would have constituted a clearly established violation of the Fourth Amendment.

**5.     Officer Cruz couldn't search the wallet even if he could otherwise have reached into the pockets.**

Inside Mr. Montgomery's pants pocket was a wallet. So when Officer Cruz reached inside this pocket, he pulled out the wallet and examined the contents in order to find a driver's license. From this examination of the contents, a jury could reasonably find a violation of the Fourth Amendment.

We've earlier concluded that Officer Cruz couldn't reach inside the pockets, but that is how he found the wallet. So the Fourth Amendment prohibited not only the reach into Mr. Montgomery's pockets but also the search of his wallet.

Defending his search of Mr. Montgomery's wallet, Officer Cruz presents three arguments:

1.     The wallet could have contained a small knife.

2.    Officer Cruz had a right to get Mr. Montgomery's driver's license.

3.    Mr. Montgomery consented to Officer Cruz's retrieval of his driver's license.

The first argument stretches beyond the district court's conclusions, for the court didn't suggest that the wallet could have contained a small knife. In fact, Officer Cruz admitted that he had retrieved the driver's license only after determining that Mr. Montgomery hadn't possessed a weapon.

Officer Cruz waived the second argument by waiting until his reply brief to argue that he was entitled to search for the driver's license. He should have made this argument when he moved for summary judgment. *See Postnet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1095 n.2 (D. Colo. 2021) ("A party generally forfeits 'or waives issues and arguments raised for the first time in a reply brief.'" (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016))). After all, Mr. Montgomery had no chance to respond. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998).

Given the timing of the argument, the court had two choices: It could disregard Officer Cruz's new argument or give Mr. Montgomery a chance to respond. *See id.* The district court didn't abuse its discretion by declining to address Officer Cruz's new argument in light of Mr. Montgomery's inability to respond. *See id.*

12

Finally, Officer Cruz argues that Mr. Montgomery consented to the retrieval of his driver's license. Consent is a question of fact. *United States v. Abdenbi*, 361 F.3d 1282, 1290 (10th Cir. 2004). And the district court concluded that a reasonable jury could find that Mr. Montgomery hadn't consented to a search of his wallet before Officer Cruz pulled it from the pocket in his pants.

Despite this conclusion, Officer Cruz argues that after he had searched the wallet, Mr. Montgomery admitted consent by saying that he had been willing to provide his driver's license. This argument fails legally and factually.

Legally, Mr. Montgomery's consent after-the-fact couldn't "transform the prior illegal search into a legal one." *United States v. Carson*, 793 F.2d 1141, 1153 (10th Cir. 1986).

Factually, a jury could reasonably find that Mr. Montgomery hadn't consented to a search of his wallet. To the contrary, Mr. Montgomery said only that he had intended to provide his driver's license at the start of the encounter. To do so, Mr. Montgomery presumably would have pulled the driver's license from his wallet rather than let the officer rummage through it. As a result, Officer Cruz couldn't obtain summary judgment for a search

of the wallet even if he were otherwise entitled to reach inside

Mr. Montgomery's pockets.[7]

## 6.    Conclusion

The district court concluded that a factual dispute existed on whether

Officer Cruz had reached into Mr. Montgomery's pockets before patting

them. If Officer Cruz had reached inside without conducting a pat-down,

he would have committed a clearly established violation of the Fourth

Amendment. Officer Cruz compounded the potential violation by searching

the wallet after retrieving it from the pocket in Mr. Montgomery's pants.

As a result, Officer Cruz is not entitled to qualified immunity and we

affirm the denial of his motion for summary judgment.

---

[7]    As noted above, Officer Cruz could be sued only if the constitutional violation had been clearly established. *See* Part 2, above. And Officer Cruz denies that his search of the pockets would have violated a clearly established right. *See* Part 4(c), above. But Officer Cruz doesn't make a similar argument about his search of Mr. Montgomery's wallet.

No. 23-1315, *Montgomery v. Cruz*

**BALDOCK**, J., concurring in the judgment only.

In this § 1983 suit, Plaintiff claims Defendant subjected him to a search of his person more intrusive than a pat-down for weapons in violation of the Fourth Amendment. The district court denied Defendant qualified immunity in the context of his summary judgment motion and Defendant appealed. Two concessions, one by each party, frame this appeal. First, Plaintiff concedes that at the time of the search, Defendant had probable cause to arrest him based on a reasonable belief that he had committed the crime of shoplifting. Second, Defendant concedes that at no time during his encounter with Plaintiff did he arrest him. Rather, Defendant merely detained Plaintiff while conducting an investigation that ultimately exonerated him.[1]

Accordingly, our qualified immunity inquiry spawns two questions, namely (1) whether a search of a suspect beyond a pat-down search for weapons runs afoul of the

---

[1] Given Plaintiff's erratic and uncooperative behavior at the time of the encounter coupled with his refusal to produce a receipt or even acknowledge that he had paid for the items he possessed, Defendant likely had probable cause to believe Plaintiff had committed the crime of shoplifting so in reality Plaintiff concedes nothing. Whether Defendant placed Plaintiff under arrest when he handcuffed him and put him in the back of his squad car for a period, according to Plaintiff, approaching one hour, however, is another matter. Such query, as I shall explain, should make no difference to the outcome of this case, but under the current state of the law in the Tenth Circuit, makes all the difference. Yet Defendant, as the master of his defense, concedes Plaintiff was never arrested. I do not understand why. While the question of whether an investigative detention has evolved into an arrest always turns on the facts of the case, "it has been clear for some time that the use of handcuffs generally converts a detention into an arrest." *Manzanares v. Higdon*, 575 F.3d 1135, 1150 (10th Cir. 2009). Add to this Plaintiff's placement in the back of Defendant's squad car *for an hour* and Defendant's concession becomes all the more puzzling. *See Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (recognizing an arrest is characterized "by the involuntary, 'highly intrusive' nature of the encounter").

Fourth Amendment where probable cause to arrest a suspect exists but the suspect is never arrested, and if so (or assuming it to be so), whether the unconstitutionality of such a search was clearly established in the Tenth Circuit at the time of the search. Because the Court answers both questions in the affirmative, Plaintiff prevails. As for the first inquiry, this Court concludes the district court's factual findings demonstrate a constitutional violation given that Defendant could not justify the search as one incident to arrest, an exception to the Fourth Amendment's warrant requirement, because Plaintiff was never arrested. In other words, the Court opines that probable cause to arrest *alone* is not enough to justify the search of a suspect more intrusive than a "pat and frisk" based on safety concerns. As for the second inquiry, the Court concludes any reasonable officer in the Tenth Circuit would have understood the Fourth Amendment, absent an arrest, prohibited the search of Plaintiff notwithstanding the presence of probable cause to arrest. I reluctantly agree with the Court's conclusions but for different reasons.

## I.

The Court cites two cases, *United States v. Sanchez*, 555 F.3d 910 (10th Cir. 2009) and *United States v. Anchondo*, 156 F.3d 1043 (10th Cir. 1998), for the "clearly established" proposition that where probable cause to arrest exists, the legality of a search more intrusive than a pat-down for weapons *depends entirely* on an arrest, or as the Court puts it, "*is conditioned on* the making of an arrest." Court's Op. Part 4.c., at 9–10 (emphasis added). I respectfully suggest neither case stands for such a proposition. In *Sanchez*, officers had probable cause to arrest defendant for obstruction of justice. Defendant was detained and fully searched but not formally arrested until one hour later. We held the search of

2

defendant's person was justified as a search incident to arrest because "the arrest of [defendant] was initiated for purposes of the search-incident-to-arrest doctrine when the officers apprehended him after his flight." *Sanchez*, 555 F.3d at 922 (internal parenthesis omitted). In short, defendant in *Sanchez* was arrested *before* rather than after the search so the search incident to arrest exception to the Fourth Amendment clearly applied.

In *Anchondo*, officers had probable cause to arrest defendant for drug involvement. An officer searched defendant's person and uncovered a package of cocaine strapped to his body. Unlike in *Sanchez*, officers arrested defendant *after* the search. Thus, like in our case, in *Anchondo* a search based on probable cause occurred at a time when defendant was *not* under arrest. Nonetheless, we held a warrantless search *preceding* an arrest constituted a search incident to arrest because a legitimate basis for the arrest existed before the search and the arrest followed shortly after the search. *Anchondo*, 156 F.3d at 1045 (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of [defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.")).

As the Court points out, *Sanchez* certainly stated that "it appears there can be no search incident to an arrest unless the suspect is at some point formally placed under arrest." Court's Op. Part 4.c., at 10 (citing Sanchez, 555 F.3d at 921). But to say an arrest must occur at some point before the search *incident to arrest* exception to the Fourth Amendment's warrant requirement justifies a search is wholly unremarkable. Unlike here, in *Sanchez* and *Anchondo* we did not have to decide whether probable cause to arrest alone was sufficient to justify a search more intrusive than a pat down because defendant in both

3

cases was arrested.  Because in those cases we did not have to decide whether the legality of a search more intrusive than a pat-down for weapons "is conditioned on the making of an arrest" where probable cause is present, a future panel of this Court, absent other authority, remained free to decide no such condition exists.  *Id.* at 10.  As such, neither *Anchondo* nor *Sanchez* clearly establish the rule for which the Court cites them.  Neither case addressed the relevant question here which has nothing to do with a search incident to an arrest.  Rather, the question presented (albeit inartfully framed and argued by the defense) is whether the Fourth Amendment permits a search more intrusive than a pat-down for weapons where probable cause to arrest the suspect is present but the suspect is *not* arrested because further investigation exonerates him, *i.e.*, when the search incident to an arrest doctrine does not apply.

To say those cases stand for the proposition that probable cause to arrest is in itself insufficient to justify a search more intrusive than a pat-down search is to say the reasonableness of a search based on probable cause to arrest depends entirely on the occurrence or non-occurrence of an event—an actual arrest—*subsequent* to the search.  This most assuredly is not how the Fourth Amendment works.  Let me elucidate:  If the facts giving rise to probable cause to arrest, after further investigation, confirm the searching officer's suspicions and the suspect is subsequently arrested—the situation in *Anchondo*—the suspect may be charged with a crime.  But if such facts fail to substantiate the searching officer's suspicions and the suspect is not arrested—the situation before us— the suspect may sue the officer for violating his civil rights.  This is farcical, rendering the Fourth Amendment in these sort of cases a mere citadel of technicality.  Law enforcement

4

officials in the Tenth Circuit beware!  Where probable cause to arrest a suspect exists, make sure to arrest the suspect promptly before conducting any further investigation lest such investigation exonerate the suspect, in turn rendering you liable for a Fourth Amendment violation.

Indeed, two preeminent jurists have recognized the inanity of a rule that says where probable cause to arrest is present, the legality of a search for anything other than weapons (based, of course, on safety or security concerns) depends on whether the suspect is in fact arrested.  In *United States v. Gorman*, 355 F.2d 151 (2d Cir. 1965), Judge Henry Friendly commented that he "could not understand just what values would be served by a rule that would force the police to impose a justifiable restraint [*i.e.*, an arrest] on the person as a condition to making a search which, if fruitless, might cause them to decide against it[.]" *Id.* at 160.  Justice Roger Traynor expressed a similar sentiment in *People v. Simon*, 290 P.2d 531 (Cal. 1955):

> [I]f the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person . . . there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest.  In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. . . .  In either case, the important considerations are whether the officer had reasonable cause [*i.e.*, probable cause] before the search to make an arrest and whether the search . . . w[as] or w[as] not more extensive than would reasonably be justified as [one] incident to an arrest.

*Id.* at 533.

5

II.

In sum, neither *Sanchez* nor *Anchondo* say—and for good reason—that the search of a suspect beyond a pat-down search for weapons runs afoul of the Fourth Amendment where probable cause to arrest the suspect exists but the suspect is never arrested. Fortunately for Plaintiff, however, my oath requires me to acknowledge the Tenth Circuit regrettably has rendered a decision, cited by the Court in Part 4.b. at page nine of its opinion, that may reasonably be read to say just that. In *United States v. Ward*, 682 F.2d 876 (10th Cir. 1982), defendant was suspected of illegal sports bookmaking. Law enforcement arrived at defendant's home to execute a search warrant authorizing the search of his residence. Upon arrival, an officer "patted [defendant] down for weapons" and asked if he was armed. *Id.* at 878. When defendant acknowledged he carried a pocket knife, the officer told defendant to empty his pockets and place the contents on a table. In addition to a pocket knife, defendant produced, among other things, cash, several betting slips, and uncashed bad checks he had received from bettors. Although prior to the initial frisk, the officer had probable cause to believe defendant was engaged in illegal bookmaking, defendant, just as in our case, "was not arrested before, during, or after the search." *Id.* at 880. We held both "the initial frisk," because the officer lacked a "reasonable suspicion that [defendant] was armed and dangerous," and the "resulting second search," "inasmuch as [defendant] was not arrested," were unconstitutional. *Id.* at 880–81.

> Although [the officer] had probable cause to believe that [defendant] was committing a federal offense by engaging in bookmaking without first acquiring a wagering stamp, the initial frisk of [defendant] was not supported by a reasonable suspicion that he was armed and dangerous. Accordingly, and inasmuch as [defendant] was not arrested, the seizure of the contents of

6

his pockets, including the uncashed checks, betting slips, and $499 was not constitutionally permissible.

*Id.* at 880.

While *Ward* does not expressly say so, I cannot help but acknowledge that the opinion effectively holds probable cause to arrest a suspect alone is not enough to justify the search of a suspect absent arrest (not even a search for weapons where safety concerns are lacking—a rather rare occurrence). As such, I am left with no choice but to reluctantly concur in the Court's judgment that the Fourth Amendment law it today endorses was clearly established at the time of Defendant's encounter with Plaintiff. Outnumbered two to one, no useful purpose would be served by indulging myself and arguing the rule this Court validates today was not clearly established at the time of the subject search because *Ward* did not *explicitly* endorse such a rule. What I hope may be useful, however, is a call for the en banc Court to reexamine and overrule the current state of the law applicable here at the earliest opportunity. If, as Sir Edward Coke believed, "reason is the life of the law," this Court surely will do so sooner rather than later.

In the meantime, law enforcement in and around the Aurora, Colorado area should be aware that Plaintiff appears to welcome encounters with the police in the hope that any such encounter will produce fodder for a civil rights lawsuit. *See Montgomery v. Brukbacher*, No. 21-1073, 2021 WL 4074358 (10th Cir. 2021) (unsuccessful suit against a police officer arising out of panhandling and alleging an unlawful seizure); *Montgomery v. Bliley*, No. 21-1133, 2022 WL 1003176 (10th Cir. 2022) (unsuccessful suit against police officers arising out of panhandling and alleging an unlawful seizure); *Montgomery v.*

7

*Calvano*, No. 21-1134, 2022 WL 1132212 (10th Cir. 2022) (unsuccessful suit against a police officer arising out of suspected shoplifting and alleging an unlawful seizure); *Montgomery v. Anderson*, No. 22-1306 (10th Cir. 2022) (unsuccessful suit against police officers arising out of suspected shoplifting and alleging an unlawful seizure); *Montgomery v. Gerdjikian*, No. 22-1126, 2023 WL 1876325 (10th Cir. 2023) (unsuccessful suit against police officers arising out of panhandling and alleging an unlawful seizure); *Montgomery v. Lore*, No. 23-1106, 2023 WL 8613523 (10th Cir. 2023) (affirming partial denial of motion to dismiss in a suit against a police officer arising out of suspected shoplifting and alleging an unlawful search and seizure); *Montgomery v. Cohn*, No. 23-1101, 2024 WL 1739290 (10th Cir. 2024) (unsuccessful suit against police officers arising out of suspected shoplifting and alleging an unlawful search and seizure).  Law enforcement would be well advised to heed Plaintiff's litigious nature and proceed consistent with the current state of Tenth Circuit law no matter how formalistic.

I respectfully concur in the judgment only.